UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CUMMINGS,           :
                            :CIVIL ACTION NO. 3:15-CV-2245
          Plaintiff,        :
                            :(JUDGE CONABOY)
          v.                :(Magistrate Judge Arbuckle)
                            :
SGT. BULLOCK, et al.,       :
                            :
          Defendants.       :
                            :

_____

## MEMORANDUM

Pending before the Court is Magistrate Judge William I. Arbuckle's Report and Recommendation (Doc. 86) addressing Defendants' Motion for Summary Judgment (Doc. 74) filed by all named Defendants on May 12, 2017. With this motion, Defendants request that summary judgment be entered in their favor on all counts on substantive and procedural grounds. (Doc. 76.) For the reasons discussed below the Report and Recommendation is adopted in part, Defendants' motion is granted on procedural grounds, and claims against Defendant John Doe 1 are dismissed on procedural grounds.

## I. Background

As set out in the Report and Recommendation, Plaintiff initiated this action against thirteen named Pennsylvania Department of Corrections Defendants on November 23, 2015, alleging claims arising from a "take down" at SCI-Dallas on October 26, 2015, during which Plaintiff asserts he was beaten and subsequently

was further beaten and sexually assaulted.[1]  (Doc. 86 at 1.)

Magistrate Judge Arbuckle notes that the Amended Complaint contains

three legal claims: 1) Defendants Volack, Pavlick, Nahill, Konycki,

and Ryder used excessive force in connection with the October 26,

2015 takedown and events that followed; 2) Defendants Ryder, Owen,

and Williams sexually assaulted him in the trauma room on October

26, 2015; and 3) Defendants Corbett, Yatsko, Fillipiak, Young, and

Boyes failed to intervene to stop the alleged use of excessive

force and the alleged sexual assault.  (Doc. 86 at 19.)

Relying in part on videotape evidence, Magistrate Judge

Arbuckle substantively found that Defendants were entitled to

summary judgment on all claims except Plaintiff's claim that

Defendant Konycki used excessive force against him in the Medical

Department before Plaintiff was secured in the trauma room.  (Doc.

86 at 24-35 (video evidence cited as Doc. 79).)  He also concluded

that, although there remained a genuine issue of fact as to that

claim, Plaintiff had failed to exhaust his administrative remedies

as required by the Prison Litigation Reform Act, 42 U.S.C. §

1997e(a), and therefore, Defendants were entitled to summary

judgment on all claims.  (Doc. 86 at 26-28, 35-40.)  Magistrate

Judge Arbuckle's procedural conclusion was based on Plaintiff's

---

[1]  Three John Doe Defendants were included in the Complaint.
Two John Doe Defendants and one named Defendant, Johnny Martin,
have been terminated from the case.  John Doe I remains a
Defendant.

admission that he did not file any grievances and his failure to provide adequate facts to show that exhaustion was not required. (*See* Doc. 86 at 39-40 (citing *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013); *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016)).) Specifically, the Magistrate Judge stated that Plaintiff did "not explain why he did not submit a grievance on regular paper or how many times, and to whom, he made his requests for the proper form." (Doc. 86 at 40.) Based on these findings, Magistrate Judge Arbuckle recommended that Defendants' motion for summary judgment should be granted and Defendant John Doe I should be dismissed pursuant to Federal Rule of Civil Procedure 4(m). (Doc. 86 at 40-41.)

On April 9, 2018, Plaintiff filed objections to the Report and Recommendation.[2] (Doc. 87.) Plaintiff makes the following assertions regarding the Magistrate Judge's substantive conclusions: the video of the initial takedown upon which the Magistrate Judge relied is misleading and thus disputed in that the

---

[2] Plaintiff filed a Statement of Material Facts Opposing Defendants' Statement on April 12, 2018, in which he alleges that he filed this previously with his brief opposing summary judgment but the Report and Recommendation does not reflect it and he believes corrections officers at SCI-Coal Township tampered with his documents and removed the statement of facts. (Doc. 88 at 1.) Even if the Court were to consider the statement now filed, it would be deemed to be without legal significance in that it does not comport with the requirements of Local Rule 56.1 of the Local Rules of Court of the Middle District of Pennsylvania. Further, as noted by Defendants, the averments set out in the document currently filed were made in Plaintiff's brief in opposition to Defendants' summary judgment motion. (*See* Doc. 90 at 4-5 (citing Docs. 81, 88).)

officers formed a circle around him so that the camera could not record the excessive force alleged; he did not see the second video which the Magistrate Judge referenced regarding incidents which allegedly took place in the Medical Department trauma room; the trauma room excessive force and sexual assaults occurred when the camera was off so these claims present jury questions; for the same reason, the failure to intervene to stop these assaults present jury questions; and the alleged sexual misconduct constitutes a constitutional violation pursuant to *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015). (Doc. 87 at 1-2.) Regarding exhaustion, Plaintiff alleges that exhaustion was not required because he was thwarted from filing grievances by prison administration. (Doc. 87 at 2-3.)

Based on Magistrate Judge Arbuckle's recommendation regarding exhaustion and the Court's potential resolution of factual disputes under *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013), the Court issued an Order pursuant to *Paladino v. Newsome*, 885 F. 3d 203 (3d Cir. 2018), on May 11, 2018, inviting the parties to supplement the record with any evidence relevant to the issue of exhaustion. The parties have now done so with Plaintiff reiterating many of his previous assertions (Docs. 92, 94) and Defendants providing additional evidence on the issue (Doc. 93).

## II. Discussion

### A. *Legal Standards*

### 1. Standard of Review

When a magistrate judge makes a finding or ruling on a motion

4

or issue, his determination should become that of the court unless objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 150-53 (1985). When no objections are filed, the district court is required only to review the record for "clear error" prior to accepting a magistrate judge's recommendation. *See Cruz v. Chater*, 990 F. Supp. 375, 378 (M.D. Pa. 1998). When objections are filed, the district judge makes a *de novo* review of those portions of the report or specified proposed findings or recommendations to which objection is made. *See Cippolone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir. 1987), *cert. denied*, 484 U.S. 976 (1987). The *de novo* standard applies only to objections which are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Although the review is *de novo*, the court may rely on the magistrate judge's recommendations to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F. 2d at 7. The court may accept, reject, or modify, in whole or in part, the findings made by the magistrate judge. 28 U.S.C. § 636(b)(1).

**2.** **Summary Judgment Standard**

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014). Such inferences "must flow directly from admissible evidence." *Halsey*, 750 F.3d at 287.

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give

rise to a genuine issue. *Id.* at 324. "The non-moving party must show where in the record there exists a genuine dispute over a material fact.'" *Hankins v. Wetzel*, 640 F. App'x 130, 132 (3d Cir. Jan. 6, 2016) (not precedential) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)). "A mere 'scintilla of evidence in support of the [non-moving party]'s position will be insufficient' to create a genuine issue of fact." *Hankins*, 640 F. App'x at 132 (quoting *Anderson*, 477 U.S. at 252)).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

Without undermining this broad rule, the Third Circuit Court of Appeals explained in *Gonzalez v. Secretary of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012)), that "[a]s a general proposition, 'conclusory self-serving statments are insufficient to withstand a motion for summary judgment.'" *Gonzalez*, 678 F.3d at 263 (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)). Courts within the Third Circuit have noted that "'the issue is not whether Plaintiff has relied solely on his own testimony to challenge [a summary judgment motion], but whether Plaintiff's testimony, when juxtaposed with the other

7

evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature.'" *Jordan v. Cicchi*, Civ. No. 10-4398, 2014 WL 2009089, at *2 (D.N.J. May 16, 2014) (quoting *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012)); (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Similarly, Magistrate Judge Arbuckle quoted *Scott v. Harris*, 550 U.S. 372 (2007), to further explain the consideration of evidence at summary judgment:

> "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment . . . [and thus, t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."

(Doc. 86 at 18-19 (quoting *Scott*, 550 U.S. at 380-81).)

## B. *Plaintiff's Objections*

As noted above, Plaintiff raised objections to substantive and procedural findings made by the Magistrate Judge.  (Doc. 87 at 1-2.)  The substantive objections primarily involve claimed inadequacies in the video evidence upon which Magistrate Judge Arbuckle relied: the takedown excessive force was obscured by the camera view and location of the officers; and the camera was off during incidents which allegedly took place in the trauma room. (*Id.*)  Plaintiff objects to Magistrate Judge Arbuckle's exhaustion

recommendation on the basis that exhaustion was not required because he was thwarted from filing grievances by prison administration. (Doc. 87 at 2-3.) In his supplemental briefing of the issue, Plaintiff continues to assert that he was thwarted in his attempts to file grievances, but he provides essentially no additional evidence or meaningful details regarding his efforts. (Docs. 92, 94.) The Court will first consider Magistrate Judge Arbuckle's finding that Plaintiff's claims are barred by the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). (Doc. 86 at 36-40.)

## 1. Exhaustion of Administrative Remedies

Plaintiff alleges that he was thwarted in his attempts to file grievances on several occasions, including when he specifically requested grievance forms in the trauma room and when he was in the RHU on the day of the incident. (Doc. 92.) The Court concludes Plaintiff has not presented sufficient evidence to show that administrative remedies were unavailable to him.

The Third Circuit Court of Appeals has "clearly held that 'judges may resolve factual disputes relevant to the exhaustion issue without participation of a jury.'" *Paladino*, 885 F.3d at 210 (quoting *Small*, 728 F.3d at 271). *Paladino* clarified that notice to the parties is required before "a district court undertakes to serve as the factfinder on the exhaustion issue." *Id.*

As noted above, the Court has allowed the parties the

opportunity to provide relevant materials and the parties have responded. (Docs. 91-94.) Therefore, the Court will resolve factual disputes as warranted by the evidence provided and arguments made.

Pursuant to DC-ADM 804, an Official Inmate Grievance Form must be submitted to the Facility Grievance Coordinator using the DC-ADM 804, Part 1, and the grievance must be filed within fifteen working days after the event upon which the claim is based. DC-ADM 804 § 1.A.14. Regarding § 1997e(a)'s exhaustion language, the Supreme Court observed in *Ross v. Blake*, 136 S. Ct. 1850 (2016), "that language is 'mandatory.'" *Id.* at 1856 (citations omitted). However, as *Ross* goes on to explain, "that edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Id.* "The PLRA contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), an inmate's obligation to exhaust hinges on the 'availab[ility]' of administrative remedies. A prisoner is thus required to exhaust only those grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1853 (quoting *Booth v. Churner,* 532 U.S. 731, 738 (2001)); *see also Robinson v Superintendent SCI Rockview*, 831 F.3d 148 (3d Cir. 2016); *Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002). *Ross* reviewed "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain

10

relief." 136 S. Ct. at 1859. Relevant here is the third of these which provides that exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 136 S. Ct. 1860.

Here Plaintiff's allegation that he was thwarted from filing grievances is based only on conclusory statements that he asked for grievance forms and was refused. Even after being advised by Magistrate Judge Arbuckle that more was needed (Doc. 86 at 39-40), Plaintiff failed to provide specific factual averments regarding his allegation that he was refused grievance forms. (*See* Doc. 87 at 2-3.) Plaintiff's assertion that "prison administration" thwarted his attempt to exhaust administrative remedies and this was "clearly stated" at his deposition, in his Complaint, and with his objections (*id.* at 3) is unavailing. *Paladino*, 885 F.3d at 208; *Cooper v. Seeba*, Civ. A. No. 1:16-CV-2073, 2018 WL 1243149, at *4 (M.D. Pa. Mar. 8, 2018) (pursuant to *Ross*, 136 S. Ct. at 1860, conclusory statements insufficient to establish unavailability of the administrative process). Plaintiff never provided names or specific instances of the alleged denials. When asked about filing grievances at his deposition, Plaintiff stated "I was like man, I need some grievances." (Doc. 77-4 at 53.) This statement was made while he was in the Medical Unit when a woman he identified as Tamara Anderson was taking pictures. (*Id.*) He added that "I don't

think I said it real loud." (*Id.* at 54.) When asked if he filed any grievances after that, Plaintiff responded "As I told you, I was denied grievances. So at that time — once you're denied grievances, per court rule — say if I asked like for a grievance and they don't give it to me, I can go directly to the courts." (*Id.* at 61.) Plaintiff also generally states that once he left the psychiatric observation cell, where he had been housed for about ten days after the incident, he requested forms but was not given any. (*Id.*)

In his supplemental filing, Plaintiff first points to his specific request for grievances while in the trauma room when he said "'I need some grievances to report the assaults . . .'" (Doc. 92 at 1.) As set out above, Plaintiff said at his deposition that he made this statement when a woman identified as Tamara Anderson was taking pictures. (Doc. 77-4 at 53.) A careful review of videotape (which shows the entire period of time pictures were being taken in the trauma room) indicates that Plaintiff made no requests which were audible and no staff present in any way reacted to words uttered by Plaintiff which were of such low volume as to be inaudible. (Doc. 79.) Therefore, if Plaintiff made the alleged request so softly that it was not heard, the Court cannot conclude he was thwarted from filing grievances "through machination, misrepresentation, or intimidation," 136 S. Ct. 1860, when staff did not respond to his request.

In his supplemental filing, Plaintiff also states "I was denied grievances when I'd gone to the RHU at Dallas by RHU Corrections Officers, when I'd asked for them on 10/26/15.  Being it's been years since the events of that day happened I can not remember the specific officers I'd asked but I was totally ignored."  (Doc. 92 at 1.)  This type of vague statement is not sufficient to withstand summary judgment, *see Paladino*, 885 F.3d at 208, particularly when viewed in the context of additional evidence of record.  That evidence most notably consists of a Declaration from the Assistant to the Superintendent at SCI-Dallas stating that he is responsible for grievance record keeping which indicates Plaintiff filed five grievances during the period of October 26, 2015, through January 26, 2016, and the grievance chart which shows Plaintiff filed two grievances on October 27, 2015, one about a basic clothing issue and the other about housing/cell assignment.  (Doc. 93-1.)  Defendants assert that the Declaration and grievances filed on October 27, 2015, the day after the incident, "indisputably indicate[] that he knew of, and was able to access, SCI Dallas' grievance procedures at the time of the alleged incident."  (Doc. 93 at 4-5.)  Plaintiff questions the existence of the October 27th grievances and downplays their significance, stating he was then in a POC cell, he can't recall filing them, and even if he did it was the day after the incident.  (Doc. 94 at 1.)

The Court agrees with Defendants that the filing of grievances

the day after the alleged incident shows that Plaintiff had access to the grievance system during the relevant time period. The Court does not find Plaintiff's response persuasive and rejects Plaintiff's contention that being denied a grievance form on the day of the incident is enough to proceed on his claim (Doc. 92 at 1). Rather, evidence that grievance forms were available to Plaintiff within the time allotted for the filing of a grievance about the October 26, 2015, alleged wrongdoing precludes a finding that he was thwarted from accessing the prison grievance system as to those allegations. If an inmate demonstrably had access to grievance forms within the time allowed for filing, he cannot show that administrative remedies were unavailable for the alleged wrongdoing under *Ross*, 136 S. Ct at 1853, based only on his statements that his requests for forms were refused because accessibility undermines "machination, misrepresentation, or intimidation," 136 S. Ct. 1860. In other words, if evidence shows an inmate could have filed a grievance within fifteen working days after the event upon which the claim is based, the DC-ADM 804 grievance procedure was "'capable of use' to obtain 'some relief for the action complained of,'" *Ross*, 136 S. Ct. at 1853 (quoting *Booth,* 532 U.S. at 738). Thus, based on evidence submitted by Defendants and Plaintiff's lack of evidence supporting his exhaustion claims as well as evidence of record undermining his general assertions, the Court concludes Plaintiff has failed to

exhaust administrative remedies for claims asserted related to incidents which allegedly occurred on October 26, 2015.

## 2.  **Substantive Objections**

As set out above, several of Plaintiff's objections relate to Magistrate Judge Arbuckle's findings on the substantive merits of his claims.  Plaintiff states with his objections that the camera was turned off at the time some medical department alleged wrongdoing occurred.  (Doc. 87 at 2.)  The Magistrate Judge's analysis includes the notation that Plaintiff did not say cameras were off at the time and his findings were based in part on the observation that video taken in the medical department did not substantiate Plaintiff's allegations.  (Doc. 86 at 28-29.)  Thus, Plaintiff's current assertion that cameras were off at relevant times could impact the analysis.  However, the Court need not engage in further discussion of substantive issues based on the determination that Plaintiff has not exhausted administrative remedies.

Notwithstanding this conclusion, the Court notes that a review of the record as a whole, including the video evidence and Plaintiff's deposition testimony, undermines Plaintiff's claimed substantive errors and supports Magistrate Judge Arbuckle's assessments.  For example, regarding the takedown, Plaintiff testified that officers blocked the camera view as they continually punched him on the back of the head while he was on his knees (Doc.

77-4 at 27, 32) but, although Plaintiff was surrounded by guards, the video shows the period of time he was on his knees and indicates the period was brief and no punches were thrown. Similarly, Plaintiff claimed he had "dozens of injuries" and "at least nine lumps" on the back of his head (Doc. 77-4 at 33), but extensive video footage following the takedown (both front and rear views) shows no lumps or other evidence of injury.[3] Medical department allegations are suspect based on the atmosphere and demeanor Plaintiff and staff exhibited on the video footage from the trauma room rendering Plaintiff's credibility questionable regarding incidents which allegedly took place while the camera was off. Further, although Plaintiff alleged physical assault in the trauma room before the camera was turned on, there is no evidence that Plaintiff received the several blows to the face about which he testified, stating they resulted in his lip being "messed up," a swollen eye, and lumps on his forehead as alleged at his deposition. (Doc. 77-4 at 39-41.)

### III. Conclusion

For the reasons discussed above, the Court adopts the Report

---

[3] Although Magistrate Judge Arbuckle concluded Defendant Konycki was not entitled to summary judgment on the claim that he used excessive force when he slammed Plaintiff's head on the floor when they entered the medical department (Doc. 86 at 26-27), the Court notes that the alleged injury related to the incident, i.e., "a big hematoma on the left side of my forehead" (Doc. 77-4 at 37), is not evident on the videotape nor is nor is any other forehead irregularity.

and Recommendation (Doc. 86) in part and concludes summary judgment in favor of Defendants is proper based on Plaintiff's failure to exhaust administrative remedies and dismissal of claims against Defendant John Doe 1 is proper pursuant to Federal Rule of Civil Procedure 4(m). An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: July 12, 2018