UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CUMMINGS,               :
                                :      CIVIL ACTION NO. 3:15-CV-2245
          Plaintiff,            :
                                :           (Mannion, D.J.)
          v.                    :           (Arbuckle, M.J.)
                                :
SGT. BULLOCK, et al.,           :
                                :
          Defendants.           :
                                :

_____

**MEMORANDUM**

Here the Court considers Plaintiff's Motion for Reconsideration (Doc. 98) and related matters. With the pending motion, Plaintiff asserts that the Court's grant of summary judgment based on exhaustion grounds was inappropriate because Defendants did not, and could not, provide evidence supporting their argument that Plaintiff filed grievances during the relevant time period thereby showing administrative remedies were available to him for claims raised in his amended complaint (Doc. 40). (Doc. 98 at 1-3.)  Defendants did not oppose Plaintiff's motion and the time for doing so has passed. For the reasons discussed below, the Court will grant Plaintiff's motion in part and reconsider the determination that summary judgment was properly granted on procedural grounds (*see* Doc. 95). Because the Court amends the rationale set out in the

July 12, 2018, Memorandum (Doc. 95), this Memorandum supercedes that document.

## I.    Background

This action is based on allegations related to a takedown at the State Correctional Institution in Dallas, Pennsylvania, which occurred on October 26, 2015.  (*See* Doc. 86 at 1.)    The matter was assigned to Magistrate Judge William I. Arbuckle who provided the following background information in his March 30, 2018, Report and Recommendation (Doc. 86) which was the subject of the Court's July 12, 2018, Memorandum and Order (Docs. 95, 96).

> In his Amended Complaint, Plaintiff makes allegations against the following Defendants in their individual and official capacities: Sergeant Volack; Lieutenant Jim Corbett; Sergeant John Konycki; Corrections Officer  Owen; Corrections Officer K. Nahill; Corrections Officer Richard Young; Corrections Officer R. Pavlick; Corrections Officer Ryder; Sergeant Williams; Lieutenant Chet Filipiak; Registered Nurse Nick Yatsko; Charles Boyes; and John Doe 1.
>
> Plaintiff alleges that on October 26, 2015, at approximately 11:45 a.m., Plaintiff was taken to the ground and placed in handcuffs and shackles in the main corridor of SCI-Dallas. (Doc. 40 ¶ 6). While on the ground, Defendant Volack punched Plaintiff in the face two (2) times, and ground Plaintiff's face into the floor. *Id.* Then, Plaintiff was lifted to his knees. (Doc 40 ¶ 7). Plaintiff alleges that, while on his knees, several

DOC employees punched him in the back of the head. *Id.* He only identifies two (2) of these employees in his Amended Complaint: Defendant Nahill and Defendant Pavlick. *Id.*

Plaintiff alleges that he sustained cuts on his face when Defendant Volack ground his face into the floor. (Doc. 40, ¶ 6). Plaintiff alleges that he suffered from raised bruises on the back of his head where he was punched by Defendants Nahill and Pavlick. (Doc. 40, ¶ 7).

After Plaintiff was subdued in the main hall, he was escorted to the medical department. (Doc. 40, ¶ 8). Upon reaching the medical department, Plaintiff collapsed to his knees. *Id.* He alleges that, after his collapse, Defendant Konycki "and several other Cos" slammed Plaintiff to the floor repeatedly while his hands were restrained. *Id.* Plaintiff does not specify what injuries, if any, resulted from Defendant Konycki's conduct.[1]

Plaintiff was taken to the medical department trauma room. (Doc. 40, ¶ 9). Plaintiff alleges that the following Defendants were in the trauma room while the events described below took place: Konycki, Owen, John Doe 1, Ryder, Williams, Corbett, Yatsko, Filipiak, Boyes, and Young. Nonparties Nurse Tom Casey and Captain Martin were also present.

While in the trauma room, Plaintiff was placed on an examination table on his stomach. *Id.* Plaintiff alleges that Defendants Konycki and Owen were positioned on his left side, Defendant John Doe 1 was

---

[1] At his December 1, 2016, deposition, Plaintiff stated he "had a big hematoma" on the left side of his head as a result of the incident. (Doc. 77-4 at 37.)

on his right side, and Defendant Ryder was on a footstool at the base of the examination table. *Id*. Captain Martin Yelled "Beat the shit out of 'im!" *Id*. Plaintiff alleges that while on the examination table with his hands restrained Defendant Konycki punched Plaintiff in the face eight (8) or nine (9) times while asking if Plaintiff was "sorry," and bent Plaintiff's right wrist backwards threatening that "this is going to happen every week." *Id*. John Doe 1 also punched Plaintiff eight (8) or nine (9) times. *Id*. Defendant Owen pulled at Plaintiff's pants. *Id.* Defendant Ryder bent Plaintiff's right leg towards Plaintiff's buttock. (Doc. 40, ¶ 10). Plaintiff alleges that Defendant Ryder was attempting to snap Plaintiff's ACL or MCL, and break his ankle. *Id*. Then, Defendants Konycki, Owen, and John Doe 1 lifted Plaintiff from the examination table and bent him over a ledge. (Doc. 40, ¶ 11). Defendant Williams touched Plaintiff's left buttock through Plaintiff's pants. *Id.* Defendant Ryder pulled Plaintiff's pants down, exposed Plaintiff's buttocks, and had his face and fingers in close proximity to Plaintiff's anus. *Id.* Defendant Williams remarked "next is this." *Id.* Then, Plaintiff was pulled back up and placed back on the examination table. *Id*. Plaintiff alleges that Defendants Corbett, Yatsko, Filipiak and Young did nothing to stop the abuses perpetrated by Defendants Konycki, Owen, John Doe 1, Ryder, Williams, and nonparty Captain Martin. (Doc. 40, ¶ 12).

Following this incident, Plaintiff asked for grievance slips. (Doc. 40, ¶ 13). He alleges that his request was ignored. *Id*. He also alleges that he heard an unknown corrections officer yell "we'll fucking kill you!' *Id.*

(Doc. 86 at 3-6.)

Magistrate Judge Arbuckle recommended that Defendants' motion for

summary judgment be granted and that the non-moving Defendant John Doe I be dismissed pursuant to Federal Rule of Civil Procedure 4(m). (Doc. 86 at 40-41). In his merits analysis of the claims presented, Magistrate Judge Arbuckle concluded that Defendants were entitled to summary judgment on all but one claim against Defendant Konycki. (*Id.* at 25-35.) He also concluded that Plaintiff had failed to exhaust administrative remedies because he had not filed any grievances related to the October 26, 2015, takedown and subsequent events which form the basis of the action, and Plaintiff had not shown that exhaustion was not required pursuant to *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016), on the basis that prison officials thwarted the grievance process by refusing to provide him with the necessary forms.  (*Id.* at 35-42.)

In the July 12, 2018, Memorandum and Order (Docs. 95, 96), the Court adopted the Report and Recommendation (Doc. 86) in part and concluded Defendants were entitled to summary judgment on exhaustion grounds and claims against Defendant John Doe I were properly dismissed pursuant to Federal Rule of Civil Procedure 4(m). (Doc. 95 at 16-17; Doc. 96 at 1.) In deciding the exhaustion issue, the Court relied in part on Defendants' evidence and argument proffered in response to the Court's notice issued pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), which indicated that Plaintiff filed two grievances on October 27, 2015.  (*See* Doc. 95 at 13.) The

Court agreed with Defendants that the filing of grievances on the day after the alleged incident showed that he had access to the grievance system during the relevant time period. (*Id.* at 13-14.) Therefore, Defendants' evidence was one basis for the Court's conclusion that summary judgment was properly granted on procedural grounds. (Doc. 95 at 11-15.) Because the Court decided Defendants' Motion for Summary Judgment (Doc. 74) on exhaustion grounds, the Court did not address Plaintiff's objections to the Report and Recommendation which related to Magistrate Judge Arbuckle's merits analysis.

## II. Discussion

With the pending motion, Plaintiff maintains that his confinement in a psychiatric observation cell ("POC") on October 27, 2015, precluded him from filing grievances on that date. (Doc. 98 at 1.) He stresses that the Court would see that grievances were not filed on the date alleged if the Court were to review prison records and copies of the grievances themselves. As noted above, Defendants did not respond to the motion.

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (*quoting*

*Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: 1) an intervening change in the controlling law; 2) the availability of new evidence that was not previously available; or 3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Id.* (citation omitted). It is consistent with the wise exercise of its broad discretion for the reviewing court to consider all three bases for reconsideration. 176 F.3d at 678. Because courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly. *See*, *e.g.*, *Douris v. Schweiker*, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002).

While Plaintiff does not fully satisfy a basis for reconsideration set out above (*see* Doc. 98), the Court will exercise its broad discretion and review evidence relied upon in the Memorandum at issue. Plaintiff agrees that he did not file grievances related to the October 26, 2015, incident, but contends he did not do so because prison personnel denied him grievance forms when he requested them. (Doc. 40 at 2; Doc. 87 at 2-3.) Thus, Plaintiff's position has

7

been that the exhaustion requirement is excused. (*Id.*) The Court considered this argument pursuant to *Ross v. Blake*, 136 S. Ct. 1850 (2016), and found that Plaintiff had not shown administrative remedies were unavailable. (Doc. 95 at 10-15.) In addition to Defendants' evidence that Plaintiff had access to grievance forms during the relevant time period, the Court's exhaustion determination was also based on the conclusion that Plaintiff had not presented evidence to withstand summary judgment on exhaustion grounds because he had provided only vague statements regarding being denied grievance forms. (Doc. 95 at 11-15.) As set out above, Plaintiff asserts in his Motion for Reconsideration that he was in a POC cell on the date the grievances were allegedly received and he had no access to pen, paper, etc., and all paperwork would show his POC placement. (Doc. 98 at 1-2.) He does not submit this paperwork or provide other documentary evidence supporting his assertions.

Though Plaintiff has the burden of showing that reconsideration is appropriate, *Max's Seafood*, 176 F.3d at 677, the Court is concerned with Defendants' lack of response to the pending motion, particularly as it relates to their assertion that Plaintiff filed grievances on the day after the incident at issue. In support of their original assertions regarding grievances filed on October 27, 2015, Defendants submitted a grievance chart (Doc. 93-1 at 8) and the Unsworn Declaration of Erik Sowga (*id.* at 2-6).

Plaintiff avers that the October 27, 2015, "Received" dates noted on the chart have to be wrong because of his POC confinement on that date. (Doc. 98 at 1-3.) He states that "if the actual grievances were put before this Court," the dates would be before October 26, 2015. (Doc. 98 at 1.)

Nothing in Sowga's Declaration contradicts Plaintiff's position. Sowga states that Plaintiff filed five grievances during the October 26, 2015, through January 26, 2016, time period while he was at SCI-Dallas (Doc. 93-1 at 5), but he does not specifically address the grievances allegedly filed on October 27th or otherwise indicate the veracity of the "Received" date on the grievance chart. Copies of the grievances have not been submitted to the Court.

In light of Defendants' failure to produce the grievances at issue or otherwise support their argument regarding grievance availability, reliance on the October 27th grievances as a basis for the Court's determination that Plaintiff had not established *Ross* unavailability (Doc. 95 at 13-15) is undermined. In these circumstance, the Court concludes the best course is to disregard Defendant's argument and evidence related to grievances filed on October 27, 2015, and reconsider the propriety of the conclusion that Defendants' summary judgment motion should be granted on procedural grounds.

Eliminating October 27th grievance related considerations, the vagueness

9

of Plaintiff's assertions regarding being denied grievance forms (Doc. 95 at 11-13) remains a basis for the determination that summary judgment was proper on procedural grounds. Although Plaintiff averred that he could not remember the names of specific officers who denied him grievances because "it's been years since the events" (Doc. 95 at 13 (quoting Doc. 92 at 1)), Plaintiff's amended complaint (Doc. 40) and numerous subsequent filings, including his objections to the Report and Recommendation (Doc. 87), show that he provides great detail about the October 26, 2015, alleged events and the individual actions of each Defendant. On this record, the Court concludes Plaintiff has not shown that the grievance process was unavailable to him because his allegations related to being denied grievance forms lack the specificity required to show *Ross* unavailability, *see*, *e.g.*, *Paladino*, 885 F.3d at 208. (Doc. 98 at 11-15.)

Notwithstanding this determination, in an abundance of caution the Court will also review the merits analysis provided by Magistrate Judge Arbuckle as well as Plaintiff's objections to his merits recommendations. As set out previously, Magistrate Judge Arbuckle concluded pursuant to a merits analysis that summary judgment was appropriate on all claims except the claim against Defendant Konycki for conduct which allegedly occurred upon arrival in the medical department. (Doc. 86 at 24-35.)

Magistrate Judge Arbuckle first concluded video evidence showed that excessive force was not used in the initial takedown and Defendants were entitled to summary judgment on Plaintiff's related claims. (Doc. 86 at 25-26 (citing Doc. 79[2]).) Plaintiff objected to this finding with the allegation that the video does not tell the whole story and some officers intentionally obscured the camera site line when the abuse occurred. (Doc. 87 at 1.) Having reviewed the video, the Court concludes Plaintiff's objection is without merit.

As noted in the July 12, 2018, Memorandum,

> a review of the record as a whole, including the video evidence and Plaintiff's deposition testimony, undermines Plaintiff's claimed substantive errors and supports Magistrate Judge Arbuckle's assessments. For example, regarding the takedown, Plaintiff testified that officers blocked the camera view as they continually punched him on the back of the head while he was on his knees (Doc. 77-4 at 27, 32) but, although Plaintiff was surrounded by guards, the video shows the period of time he was on his knees and indicates the period was brief and no punches were thrown. Similarly, Plaintiff claimed he had "dozens of injuries" and "at least nine lumps" on the back of his head (Doc. 77-4 at 33), but extensive video footage following the takedown (both front and rear views) shows no lumps or other evidence of injury.

(Doc. 95 at 15-16.) In addition to showing no visible injury, video taken in the

---

[2] Magistrate Judge Arbuckle notes Document 79 is the video disc filed under seal. (Doc. 86 at 25-26.)

medical department shows a nurse informing Plaintiff that he was going to check for injuries and Plaintiff responding that he was "good." (Doc. 79, Video 3, 00:10-13.) The video further shows the nurse examining Plaintiff and stating specifically that he checked for face and head injuries and found none. (*Id.* 00:27-33.) The nurse subsequently confirmed that he saw no injuries and asked Plaintiff if he had any. (*Id.* 00:34-43.) Plaintiff responded that he did not. (*Id.*)

Although *de miminis* injury may support an excessive force claim, the Supreme Court has noted that "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (internal quotations omitted). The use of video evidence at the summary judgment stage was approved by a panel of the Third Circuit in *Fennell v. Cambria County Prison*, 607 F. App'x 145, 148 (3d Cir. 2015) (not precedential), with the determination that the district court properly relied on videotape evidence to resolve factual disputes. *Fennell* relied on *Scott v. Harris*, 550 U.S. 372, 380 (2007), for the proposition that "'[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purpose of ruling on a motion for summary judgment.'" 607 F. App'x at 148 (quoting *Scott*, 550 U.S. at 380).

Here the video shows that Plaintiff's claims regarding the use of excessive force during the initial takedown and subsequent events resulted in "no discernable injury," 559 U.S. at 37-38, as assessed by a nurse at SCI-Dallas and Plaintiff himself. Although Plaintiff maintains that post-takedown alleged incidents occurred when the camera was off, he states that they occurred before the nurse examined him. (Doc. 87 at 2.) Thus, the examination and dialog contradict Plaintiff's assertions that he sustained numerous injuries, including a swollen eye, ripped skin and blood on his face, several lumps on the back of his head, and a huge lump on his forehead. (Doc. 40 at 1.) Plaintiff's averments that his wrist and right leg were bent in a way that caused extreme pain (Doc. 40 at 2) do not support an excessive force claim because Plaintiff did not complain of any related injury, the nurse found none, and the video shows Plaintiff walking normally after the alleged incidents (*see* Doc. 79 Video 3). As this determination is based on video evidence directly related to injury assessment following the alleged uses of force, whether a camera was on or off at the time of the alleged use of force is not determinative of the viability of the claim. Therefore, summary judgment on all excessive force claims is

appropriate.[3]

Based on the conclusion that summary judgment is appropriate on all excessive force claims, the Court agrees with Magistrate Judge Arbuckle's determination that Defendant's Motion for Summary Judgment should be granted on related failure to intervene claims. (Doc. 86 at 34-35.)

Finally, the Court concludes Plaintiff's objection related to his sexual assault claim (Doc. 87 at 2) is without merit. Magistrate Judge Arbuckle summarized the sexual conduct as follows:

> Plaintiff alleges that Defendant Williams touched Plaintiff's buttocks through his pants and made a suggestive comment. Plaintiff also alleges that Defendant Owen pulled at his pants. Plaintiff further alleges that Defendant Ryder pulled Plaintiff's pants down to expose Plaintiff's buttocks and placed his face and fingers in close proximity to Plaintiff's anus.

(Doc. 86 at 32.) Magistrate Judge Arbuckle specifically found that "even accepting Plaintiff's allegations as true, he fails to state an Eighth Amendment

---

[3]  Although Magistrate Judge Arbuckle did not rule on the merits of the claim because no video of the incident contradicted Plaintiff's allegations (Doc. 86 at 26-28), the rationale set out in the text applies to Plaintiff's claim against Defendant Konycki which allegedly occurred inside the medical department. As noted in the July 12th Memorandum, "the alleged injury related to the incident, i.e., 'a big hematoma on the left side of my forehead' (Doc. 77-4 at 37), is not evident on the videotape nor is any other forehead irregularity." (Doc. 95 at 16 n.3.)

claim. Plaintiff alleges [a]n isolated incident of conduct which, if taken as true is despicable, but does not involve a harm of federal constitutional proportions." (*Id.* at 33 (citing *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("isolated episodes of harassment and touching . . . are despicable and, if true they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court")).)

Plaintiff maintains that he has stated a viable claim pursuant to *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015): "'A corrections officer's intentional contact with an inmate's . . . intimate areas, which serves no penological purpose and is undertaken with the intent to . . . humiliate the inmate' is exactly what happened." (Doc. 87 at 2 (quoting *Crawford*, 796 F.3d at 254).) Because the Court of Appeals for the Third Circuit rejected *Crawford's* broad holding in *Ricks v. Shover*, 891 F.3d 468 (3d Cir. 2018), Plaintiff's assertion that he has stated a claim for sexual assault because the contact which occurred here is contact described in *Crawford* is without merit.

*Ricks*, which was decided after Magistrate Judge Arbuckle issued his Report and Recommendation, noted that "whether sexual abuse can constitute cruel and unusual punishment is a matter of first impression in our Court." *Id.*

at 471. *Ricks* relied in part on *Boddie* and specifically reviewed the rationale and holding of the Second Circuit's later *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015). *See Ricks*, 891 F.3d at 473-75. The Third Circuit Court agreed that "'sexual abuse of prisoners, once overlooked as a distasteful blight on the prison system, offends our most basic principles of just punishment.'" 891 F.3d at 473 (quoting *Crawford*, 796 F.3d at 260). Recognizing the *Crawford* holding that "'[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment,'" 891 F.3d at 474 (quoting 796 F.3d at 254), *Ricks* concurred that "'a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights,'" 891 F.3d at 475 (quoting 796 F.3d at 257). However, the Circuit Court did not adopt *Crawford's* holding and focused on a continuing two-prong inquiry for Eighth Amendment cruel and unusual punishment claims, i.e., the subjective and objective components set out in *Hudson v. McMillian*, 503 U.S. 1 (1992). 891 F.3d at 474-76. Thus, *Ricks* concluded that "even if sexualized touching lacks a penological purpose, it may still fall below the threshold of constitutional cognizability based on a lack of objective seriousness." *Id.* at 476.

Providing guidance on "[w]hat level of inappropriate conduct objectively constitutes a violation," 891 F.3d at 474, *Ricks* noted that the "objective element is . . . 'contextual and responsive to contemporary standards of decency.'" *Id.* at 476 (quoting *Hudson*, 503 U.S. at 8). *Ricks'* declined to craft a mechanical factors test for when sexual contact would be objectively sufficiently serious but set out guidelines and described situations where conduct would definitely be found within that category. *Id.* at 478.

> The scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact. But it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline. In context, including whether it violates established prison procedures, other sexualized touching may also be objectively serious.

*Id.*

Based on *Ricks*, an isolated incident may give rise to a constitutional claim if sufficiently serious, 891 F.3d at 475. However, the Court agrees that Plaintiff has failed to state a claim of constitutional proportion here in that the conduct complained of in the single incident at issue does not rise to the level of the situations identified in *Ricks* which were found to be objectively sufficiently serious, 891 F.3d at 478. Plaintiff does not allege that any

Defendant touched his genitalia or had prolonged contact with intimate areas: he says that Defendant Williams touched his left buttock and said "next is this" before Defendant Ryder pulled his pants down and had his face and fingers close to Plaintiff's anus. (*See* Doc. 40 at 2.) While, if true, this is certainly inappropriate conduct which should not be trivialized, the Court cannot conclude that the conduct rises to the level of an Eighth Amendment violation.

## III. Conclusion

For the reasons discussed above, the Court alters the rationale set out in the July 12, 2018, Memorandum (Doc. 95) for granting Defendants' Motion for Summary Judgment (Doc. 74). The Court grants Plaintiff's Motion for Reconsideration (Doc. 98) in part with the result that reliance on grievances allegedly filed on October 27, 2015, has been eliminated as a basis for the decision. An appropriate Order is filed simultaneously with this Memorandum.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

DATED: January 8, 2019
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-2245-01.wpd